### BALDWIN v. FLAGG AND WIFE.

1. *Ex parte* affidavits may be used for the purpose of obtaining a rule to
   show cause, but are not competent to prove the facts necessary to sup-
   port a motion not of course, or to be read on the hearing of a rule to
   show cause depending on facts extrinsic the record; such facts can
   only be brought before the court by depositions taken on notice.

2. The practice of taking affidavits *ex parte*, to be used on the argument
   of a motion, is peculiar to the Court of Chancery, and has never been
   adopted in the courts of law.

3. A residence or place of abode in this state of a temporary or perma-
   nent character, at which a summons might lawfully be served, is the
   condition on which process of attachment cannot be issued. If a
   debtor has not, at the time the writ of attachment is issued, such a
   place of abode that a summons could be served at it, he is a non-resi-
   dent within the meaning of the statute, and may be proceeded against
   by attachment.

4. The residence of the wife may be in one place or jurisdiction, and that
   of the husband in another place or jurisdiction. But where the hus-
   band and wife are living together as members of one family, the

residence of the husband is considered in law as the residence of the wife.

5. The second section of the act of March 23d, 1881, (*Pamph. L., p.* 184,) which provides "that in all cases where a bond and mortgage has or hereafter may be given for the same debt, all proceedings to collect said debt shall be first to foreclose the mortgage; and if, at the sale of the mortgaged premises under said foreclosure proceedings, the said premises should not sell for a sum sufficient to satisfy said debt, interest and costs, then and in such case it shall be lawful to proceed on the bond for the deficiency," is unconstitutional and void as to antecedent obligations.

On *certiorari* to review the decision of the Circuit Court of the county of Union in matter of attachment.

Argued at June Term, 1881, before Justices DEPUE, VAN SYCKEL and MAGIE.

For the plaintiff in *certiorari*, A. Q. Keasbey.

*Contra,* C. S. Titsworth.

The opinion of the court was delivered by

DEPUE, J. This writ of attachment was issued out of the Circuit Court of the county of Union. Motion to set aside the writ was made and denied in the Circuit, and this writ of *certiorari* was sued out to review the decision of the Circuit Court judge.

The motion was heard in the Circuit, and is presented here on affidavits taken *ex parte,* without notice.

The proper practice in such cases is to obtain a rule in the court out of which the writ is issued, that the plaintiff show cause why the writ should not be set aside, with leave to take affidavits, under which depositions may be taken in compliance with sections 219 and 220 of the Practice act. *Rev., p.* 882. *Ex parte* affidavits may be used for the purpose of obtaining a rule to show cause, but are not competent to prove facts necessary to support a motion not of course, or to be read on the hearing of a rule to show cause, depending on facts extrinsic the record. Such facts can only be brought before the

court by depositions taken on notice. *Dare* v. *Ogden, Coxe* 91; *Parker* v. *Sussex Bank,* 3 *Halst.* 160; *Cooper* v. *Galbraith,* 4 *Zab.* 219; *State* v. *Gardner,* 5 *Vroom* 329. The practice of taking affidavits *ex parte,* to be used on the argument of a motion, is peculiar to the Court of Chancery. If copies are regularly served, such affidavits may be used in the Court of Chancery in virtue of the 137th of the Chancery Rules. *Dickinson's Chan. Prec.* 35, 338, *n.* This practice has never been adopted in the courts of law. The rules of this court require that all affidavits taken in pursuance of any rule of court, or to be made use of on any argument or hearing, (affidavits for trial at bar, putting off causes and matters of course only excepted,) shall be taken on four days' notice, at least, of the time and place of taking the same, and not otherwise. *Rules of Supreme Court, Nos.* 65, 66.

It would probably have been better if the regular course of practice had been followed in this instance. The examination and cross-examination of witnesses on depositions taken in the presence of parties or their counsel is the most satisfactory method of presenting facts. But both parties having used *ex parte* affidavits without objection, the case will be disposed of as it has been presented.

Process of attachment for the collection of a debt is an extraordinary, and not an ordinary writ. The attachment act authorizes resort to such a proceeding where the debtor resides out of this state. *Rev., p.* 42, § 3. But the use of this writ when the debtor is within reach of the ordinary process of the court, is wholly inconsistent with the spirit and design of the statute. *City Bank* v. *Merrit,* 1 *Green* 131. By the Practice act, a summons may be served by a copy served on the defendant in person two days before its return, or by leaving it at his dwelling-house or usual place of abode six days before its return. *Rev., p.* 855, § 49. Whenever the propriety of a writ of attachment is in issue, the question is decided on a comparison of the Practice act, with respect to the service of writs of summons, with the provisions of the attachment act.

*Perrine* ads. *Evans* in this court (6 *Vroom* 221,) and *Stout* **v.** *Leonard* in the Court of Errors, (8 *Id.* 492,) have placed this subject on a rational basis. A debtor may have his domicile in another state, and yet be exempt from process of attachment in this state. He may be in the habit of coming into this state so frequently and openly, that a creditor by watching an opportunity, may obtain personal service of process upon him, and still he will be liable to process of attachment. A residence or place of abode in this state of a temporary or permanent character, at which a summons might lawfully be served, is the condition on which process of attachment cannot be issued. If the debtor has not such a place of abode that a summons could be served at it, he is a non-resident within the meaning of the statute, and may be proceeded against by attachment. Obviously, the time when the writ was issued and served is the time as of which the debtor's residence is material; and, as was said by the Chancellor in Stout *v.* Leonard, the creditor and the courts must be guided, in determining whether the debtor is within the provision of the statute, by the ordinary and obvious *indicia* of residence, and the purposes of the act may not be thwarted by the secret mental resolves or intentions of the debtor on the subject of his domicile.

The writ of attachment was issued against the husband and wife as non-resident debtors. The motion to set aside the writ is made on behalf of the wife.

As a general rule, the legal residence of the wife follows that of her husband. *Hackettstown Bank* v. *Mitchell,* 4 *Dutcher* 516. There may be circumstances under which the residence of the wife may be in one place or jurisdiction and that of the husband in another place or jurisdiction. But where the husband and wife are living together, members of one family, the residence of the husband is considered in law as the residence of the wife. *Greene* v. *Greene,* 11 *Pick.* 409; *Hunt* v. *Hunt,* 72 *N. Y.* 217.

The husband is an attorney and counsellor-at-law of the city of New York. It appears that for the last five years he

has not been in the active practice of his profession. During that period, he has, with his family, been in the habit, for eight months in each year, of occupying a house at Summit, in the county of Union, the title to which is in his wife, and spending four months, in the winter, in New York city, having no home or residence there, except rooms in a hotel or boarding-house, where he and his wife boarded. He testifies that he has often voted at Summit, has been assessed, and has paid personal and poll taxes there, and that for the last four years he has had no other residence or place of abode. The wife's affidavit is to the same effect; and the affidavits of several persons residing at Summit, showing that they regarded the defendant and her husband as residents of Summit, have also been produced.

The affidavits submitted by the defendant may make out a *prima facie* case of a residence by the defendant and her husband at Summit—a place of abode within the meaning of the Practice act—down to the end of the summer of 1880. But they do not meet the case made by the plaintiff in the affidavits he has submitted.

The defendant and her husband left the house at Summit in November, 1880, and after that time lived in New York city, boarding. They were living there when the writ was issued. The furniture was left in the house, and in charge of a man who lived in the house. The affidavit for the attachment was made March 24th, 1881. The writ was issued March 25th, and served March 26th.

The plaintiff's attorney testified that he had filed a bill to foreclose the mortgage on the premises at Summit, given to secure the bond, the indebtedness on which is the foundation of this writ; that he visited the premises on the 14th of March, to ascertain whether subpœna in the foreclosure suit could be served there; that he found the house unoccupied and closed; that on inquiry he learned that the key of the house was to be found next door; that he found the key in the possession of one Hearn, who said he had been coachman for the defendants, and then had charge of the premises,

watching them; that Hearn got the key, entered the house by a back door, and let him in at the front door; that the house had every appearance of being closed, unoccupied and unused; that the furniture in some of the rooms was huddled together and covered over with sheets; that the bedsteads had nothing but uncovered mattresses on them; that in the kitchen there was a bed, which Hearn told him he slept in while watching the house; that the tank for the supply of water for the bath-room and bed-rooms was empty; that the blinds were drawn in and tightly closed, and everything indicated that the house had been unoccupied for a long time.

The affidavit of James Long, a furniture dealer at Summit,. states that on the 23d of March, Mrs. Flagg saw the deponent at his store, and asked him if he would take her furniture to. store in his place, saying that she thought of renting her place for the season, and that he was engaged on the 23d, 24th and 25th of March, in packing the furniture for that purpose.

It further appears, by the affidavits, that the husband voted at an election in the city of New York on the 2d of Novem-ber, 1880, and that, by the laws of New York, no one is a qualified voter unless he has been an inhabitant of the State of New York for one year next preceding the election, and for four months a resident of the city and county of New York, and, for thirty days next preceding, a resident of the election district in which he casts his vote; and that, to regis-ter as a qualification to vote, these facts as to residence must be sworn to.

On this presentation of facts, the court below decided that the defendants had not, at the time this writ was' issued, an actual residence, a place of abode, in this state, within the. meaning of the statute.    I think the decision was justified by the proofs.    If, on a re-examination of the facts here, the cor-rect result was in doubt, the order of the court would be affirmed; for, on a review of a decision presenting a mixed question of law and fact, the conclusion of the court below on the facts must be plainly erroneous to warrant a reversal on the ground that questions of fact were erroneously decided.

Another ground taken by counsel for setting aside this writ is, that this action was not properly brought.

The debt for which the attachment issued is upon a bond which is also secured by a mortgage. When the affidavit was made, a suit was pending in the Court of Chancery for the foreclosure of the mortgage.

By section 2 of an act of the legislature, passed March 23d, 1881, it is provided, "that, in all cases where a bond and mortgage has or hereafter may be given for the same debt, all proceedings to collect said debt shall be first to foreclose the mortgage; and if, at the sale of the mortgaged premises under said foreclosure proceedings, the said premises should not sell for a sum sufficient to satisfy said debt, interest and costs, then, and in such case, it shall be lawful to proceed on the bond for the deficiency." Section 3 provides that if, after the foreclosure and sale of any mortgaged premises, judgment be recovered in a suit on the bond for any balance of debt, such recovery shall open the foreclosure and sale of the said premises, and the person against whom the judgment has been recovered may redeem the property by paying the full amount of money for which the decree was rendered, with interest, to be computed from the date of said decree, and all costs of proceedings on the bond, provided that a suit for redemption is brought within six months after the entry of such judgment. *Pamph. L.* 1881, *p.* 184.

The bond and mortgage in this case were executed and delivered on the 26th of August, 1880, and the money secured by them was payable on demand, with interest. The bond and mortgage were subsisting contracts when the act of 1881 was passed.

The act of 1881 is, in terms, retrospective. It applies to bonds and mortgages theretofore as well as thereafter made. If it is valid as to antecedent contracts, this suit was prematurely brought, and no objection has been made to the mode in which the question has been raised.

The state constitution prohibits the enactment of any law which impairs the obligation of contracts, or deprives a party

of any remedy for enforcing a contract which existed when the contract was made. *Const. N. J., art. IV.,* § 7, *p.* 3.

The effort to draw any definite line of demarcation between a law affecting the obligation of a contract and one relating to the remedy upon it, within this constitutional provision, is impracticable. *Rader* v. *Southeasterly Road District*, 7 *Vroom* 273, stands on the outermost limit of the legislative power over remedies upon contracts which existed when the contract was made. There, the legislature repealed an act creating a municipal body which had no property, whose franchises consisted in the power to execute certain public improvements, and to make assessments to defray the costs and expenses thereof, and substituted in its place another municipal body, having exactly the same functions and powers, and imposed upon the latter body the obligation to complete and carry out the contracts made by its predecessor, and to pay all just debts contracted by the former body. Contracts, and the remedies upon them, existing under the original act, were retained unaltered, except that such contracts were to be executed by one set of public officials instead of another. Whether the plaintiff sought his remedy on his contract by action against the artificial body which made the contract, or the one which had been put in its place, was a matter of indifference, affecting only the formal party to his suit; and his judgment, when recovered, was of precisely the same value.

The Chancellor, in *Newark Savings Institution* v. *Forman,* 6 *Stew.* 436, sustained the constitutionality of the first section of the act of 1880, (*Pamph. L., p.* 255,) on the same ground— on the ground that that section only deprived the Court of Chancery of a jurisdiction to enforce legal obligations conferred upon it by statute, which was concurrent with the remedy at law, and left unimpaired the remedy by action in the courts of law, which was of the same character, and equally efficacious. The application was for a decree for the deficiency against the obligor and the assignor of the mortgage, who had guaranteed its payment.

The most cursory examination of the act of 1881 will dis-

close that its constitutionality cannot be affirmed under either of the cases cited. Its purpose and intent were obviously to confer upon the obligor named, in a bond secured also by a mortgage, a substantial advantage he did not have before the act was passed. Upon such an obligation, the obligee, prior to this act, had two remedies, the fruits of which were entirely different. He might enforce the lien of the mortgage upon the mortgaged premises by a suit for a foreclosure, and also sue on the bond, and recover a judgment *in personam*, enforceable by an execution and levy on all the property of the obligor, real and personal. This suit he might bring as soon as the bond became due and payable. Such a suit, by the act of 1881, is postponed until a decree of foreclosure and a sale of the mortgaged premises under it shall be obtained. The act, in effect, enlarges the time for the payment of the bond—the performance of the condition upon which it was made, for the indefinite period during which the foreclosure suit and the proceedings to effect a sale of the mortgaged premises may be pending.

The obligation of a contract is synonymous with the ability to enforce its performance. It consists in the power and efficacy of the law which applies to and enforces performance of it, or an equivalent for non-performance. Thus, if a party contracts to pay a certain sum on a certain day, the contract binds him to perform it on that day, and this is its obligation. 2 *Story on Const.*, § 1378. It is perfectly clear that any law which enlarges, abridges, or in any manner changes the intention of the parties, resulting from the stipulations in the contract, necessarily impairs it, and the manner or degree in which this change is effected can in no respect influence the conclusion. Any deviation from its terms, by postponing or accelerating the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are part of the contract, however minute or apparently immaterial in their effect upon it, impairs its obligation. 2 *Story on Const.*, § 1385. "The obligation of a contract, in the constitutional

sense," says Mr. Justice Field, "is the means provided by law by which it can be enforced—by which the parties can be obliged to perform it. * * * * Any authorization of the postponement of payment, or of the means by which such postponement may be effected, is in conflict with the constitutional inhibition." *Louisiana* v. *New Orleans*, 102 *U. S.* 206.

A legislative act which enlarges the time for the performance of an existing contract for a definite or indefinite period, however short, would plainly impair the obligation of the contract. This is the exact import of the act of 1881. It enlarges the time for the payment of the money secured by the bond beyond the period named in it for payment, and postpones the default of the obligor until the remedy on the collateral security of the mortgage is exhausted. In the present case, the act, if valid, converted a bond conditioned to pay an entire sum of money on demand into a contract to pay the deficiency after a decree of foreclosure and the sale of mortgaged premises.

The act not only postpones the obligee's remedy on his bond until the foreclosure proceedings are terminated, but has also impaired the value of the mortgage security by subjecting the purchaser's title to conditions of redemption after sale, which must diminish the vendible value of the mortgaged premises.

We think the act of 1881, as applied to antecedent obligations, clearly in violation of the constitutional prohibition referred to.

The order under review should be affirmed, with costs.