JOHN DROP, ET AL., PLAINTIFF-APPELLANT, v. TOWN OF
BELLEVILLE, MUNIC. CORP. OF STATE OF NEW JERSEY,
DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 13, 1983—Decided November 15, 1983.

Before Judges ANTELL, JOELSON and McELROY.

*Gaccione, Pomaco, Beck,* & *Zampino* for appellant (*Frank Pomaco,* on the brief).

*Frank J. Zinna* for respondent (*Frank J. Zinna* on the brief).

The opinion of the court was delivered by

McELROY, J.A.D.

This is an appeal from a decision of the Law Division denying to plaintiffs-appellants, upon retirement from defendant-respondent's police force, the right to a lump sum payment for accumulated and unused sick pay provided to "uniformed and nonuniform" town employees under Ordinance Number 1954, adopted July 27, 1976, and Ordinance Number 1964, enacted October 26, 1976. We affirm that decision.

The trial judge viewed these ordinances as facially ambiguous and in aid of interpretation utilized the minutes of meetings of the respondent's board of commissioners at which the ordinances were considered and adopted as well as transcripts made from the taped recordation of the public discussion had prior to their enactment. He also considered a collective bargaining agreement between the town and the Policemen's Benevolent Association of Belleville (PBA) which granted unlimited annual sick leave benefits to plaintiffs as members of the PBA. In addition, the court held a plenary hearing in which the testimony of the town commissioners was taken.

On April 26, 1982 the judge rendered an oral decision. He reasoned that the record presented, particularly the minutes and transcripts of the public hearings and the collective bargaining agreement demonstrated that the ordinances were not intended to apply to plaintiffs.

Plaintiffs appeal contending: (1) the ordinances are unambiguous, clearly give them the benefits sought, and thus require no extrinsic evidence in aid of interpretation; (2) even if the ordinances are viewed as ambiguous the court erred in considering present day testimony from the commissioners as to their intent in passing this legislation; (3) that if resort to legislative history was necessary, such material evinces legislative intent to provide police officers with the benefits conferred; (4) the grant of unlimited paid sick benefits by the collective bargaining agreements and the lump sum benefits of Ordinance Number 1964 are not inconsistent, and (5) that the exclusion of plaintiffs from the benefits of these ordinances constitutes a denial of equal protection under the Fourteenth Amendment of the Constitution of the United States.

Ordinance 1954, effective July 27, 1976 in pertinent part provides:

BE IT ORDAINED BY THE BOARD OF COMMISSIONERS OF THE TOWN OF BELLEVILLE, NEW JERSEY:

THAT, the following regulations are hereby established for Service Credit for Sick Leave for both Uniform and Non-Uniform employees of the Town of Belleville, N.J. that are permanent employees, full-time temporary employees or full-time provisional employees, or full-time unclassified employees as provided for by Title 11 Civil Service and New Jersey Administrative Code, Department of Civil Service:

SECTION.—I. SERVICE CREDIT FOR SICK LEAVE:

All permanent employees, uniform and non-uniform, full-time temporary or full-time provisional employees, or full-time unclassified employees shall be entitled to sick leave with pay based on their aggregate years of service:

\*       \*       \*       \*       \*       \*       \*       \*

SECTION.—II. AMOUNT OF SICK LEAVE:

The minimum sick leave with pay shall accrue to any full-time employee on the basis of one working day per month during the remainder of the first calendar year of employment after initial appointment and fifteen (15) working days of every calendar year thereafter. Part-time permanent employees shall be entitled to sick leave as established by a ratio to the number of hours worked:

a. Any amount of sick leave allowance, not used in any calendar year shall accumulate to the employee's credit from year to year to be used if and when needed for such purposes;

b.  Upon termination the appointing authority shall certify to the Department of Revenue and Finance, Treasurer's office, the employee's accumulated sick leave which shall be made a part of the employee's permanent record;

c.  An employee who has been reemployed shall be credited with the total accrued sick leave at the termination of his/her previous employment, providing he/she successfully completes his or her working test period in the position in which he or she has been reemployed.

Ordinance 1964, adopted three months subsequent to Ordinance 1954, obviously was intended to implement and extend the benefits granted by the prior ordinance.  This clearly appears in the provisions we have emphasized in the quotation that follows, and is not disputed by either party.  In pertinent part it provides:

BE IT ORDAINED BY THE BOARD OF COMMISSIONERS OF THE TOWN OF BELLEVILLE, NEW JERSEY

SECTION I.  *THAT each town employee both uniform and non-uniform* in the classified service of Civil Service of the town and each town employee both uniform and non-uniform not in the classified service of Civil Service of the town *who has been granted sick leave* under terms and conditions similar to classified employees *in accordance with Ordinance No. 1954 adopted July 27, 1976 and has been subject to Ordinance No. 1954 adopted July 27, 1976 shall be entitled upon retirement on or after January 1, 1977 from a State Administered Retirement System to receive a lump sum payment as supplemental compensation for each full day of earned and unused accumulated sick leave which is credited to him or her on the effective date of his or her retirement* on the basis of one (1) working day per month during the remainder of the first calendar year of employment after initial appointment and fifteen (15) working days of every calendar year thereafter minus any and all used sick leave in a manner prescribed by Title 11, Civil Service and New Jersey Administrative Code, Department of Civil Service.  An employee who is not a full time employee [sic] the total compensation shall be as established by a ratio to the number of hours worked.

\*      \*      \*      \*      \*      \*      \*      \*

SECTION III.  The supplemental compensation payment to be paid hereunder shall be computed at the rate of one-half of the eligible employee's daily rate of pay for each day earned and unused accumulated sick leave based upon the average annual compensation received and that is reported to employee's State Administered Retirement System during the last year of his or her employment prior to the effective date of his or her retirement, but the total payment shall not exceed six (6) months of the average annual compensation received and that is reported to employee's State Administered Retirement System during the last year of his or [her] employment prior to the effective date of his or her retirement.  Overtime pay or other supplemental pay that is not reported to

employee's State Administered Retirement System shall not be included in the computation.

SECTION IV.   Upon application made by an employee for retirement, his or her appointing authority shall certify within forty-five (45) days the number of earned and unused accumulated sick leave for which supplemental compensation is to be paid.

\*       \*       \*       \*       \*       \*       \*       \*

SECTION VIII.   *An employee who is not subject to the provisions of the sick leave Ordinance No. 1954 adopted July 27, 1976, shall be excluded from all payments and benefits as provided for in this ordinance.*

SECTION IX.   The above supplemental compensation plan and payments shall become effective January 1, 1977.   [Emphasis supplied]

Although we agree with the trial court's ultimate conclusion that these correlated ordinances were not intended to include plaintiffs, we feel that rational interpretation can be attained without resort to the minutes of the board meetings, the transcribed record of the public discussion of these ordinances or the testimony of the commissioners.   We do not, therefore, treat the issue of the propriety of the use of the testimony of the commissioners.   What is required is the application of usual rules of statutory construction, analysis of the purposes of the act and the language employed and the factual setting within which these enactments were created.

It is settled that ordinary rules of statutory construction are applied to interpretation of municipal ordinances.   *AMN, Inc. of New Jersey v. So. Bruns. Tp. Rent Leveling Bd.,* 93 *N.J.* 518, 524–525 (1983).   It has been observed that although "an ordinance may contain language so clear in meaning that there is no need or possibility of construction, it may, on the other hand, contain language doubtful or ambiguous in meaning so that a meaning can be given to it only by construction, *and sometimes only by construction in the light of circumstances and conditions at the time of its enactment and in the light of its purposes."*   6 *McQuillan, Municipal Corporations* (3 ed.1980), § 20.42 at 104.   [Emphasis supplied].

These ordinances were enacted within three months of each other, refer to the same subject matter, seek to achieve

similar legislative purpose and the benefits of Ordinance 1964 are by that act specifically limited only to employees who are granted the benefits of Ordinance 1954. Neither party disputes that Ordinance 1964 was contemplated at the time Ordinance 1954 was adopted. Both ordinances should and must be read *in pari materia. Mimkon v. Ford,* 66 *N.J.* 426, 433–434 (1975). They "are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent. Such enactments are to be considered 'as a homogeneous and consistent whole, giving effect to all their provisions.'" *State v. Green,* 62 *N.J.* 547, 554–555 (1973).

The meaning of these ordinances "can be determined by the reason and spirit of the enactment." *L.P. Marron & Co. v. Mahwah Tp.,* 39 *N.J.* 74, 80 (1963). "When the general intent is found, general words may be restrained accordingly, and those of narrower significance expanded to effectuate that intent." *Sperry and Hutchinson Co. v. Margetts,* 15 *N.J.* 203, 209 (1954).

The words "uniform and non-uniform" employees are used in both ordinances. Plaintiffs are clearly uniformed employees of the town. The utilization of these very general and inclusive words is the source from which the suit of plaintiffs springs. We agree with plaintiffs that the words "all . . . uniform and non-uniform employees" are unambiguous. They cannot, however, be considered as standing alone but must be viewed in the context of other provisions of the ordinances and in light of the circumstances and conditions existing at the time of the adoption of these enactments.

> Additionally, words alone do not control; rather it is the internal sense of the law which controls. The intention comes from a general view of the whole expression rather than from the literal sense of the particular terms. *Palkoski v. Garcia,* 19 *N.J.* 175, 181 (1955). The nature of the subject matter, the contextual setting, and statutes *in pari materia* must all be viewed together in seeking the legislative intent. The import of a particular word or phrase is controlled accordingly. Isolated expressions cannot be invoked to defeat a reasonable construction. *Giles v. Gassert,* 23 *N.J.* 22, 33–34 (1956). [*Loboda v. Clark Tp.,* 40 *N.J.* 424, 435 (1963)]

Since Ordinance 1964 limits its lump sum payment of accumulated and unused sick leave only to those employees who are subject to and were granted 15 days for each calendar year of employment under Ordinance 1954 it is apparent that enactment must first be analyzed to ascertain the legislative intent. In that process we cannot ignore the light shed by the facts that admittedly existed at the time of adoption of Ordinance 1954 and Ordinance 1964.

Ordinance 1954 was enacted July 27, 1976. At that time there was in existence, for a term ending December 31, 1977, a collective bargaining agreement between the town and the PBA. This contract provided that "[t]he Town's policy of granting unlimited sick leave to employees covered by this Agreement shall remain in full force and effect during the term of this Agreement." Plaintiffs admit that this clause "has appeared in every collective bargaining agreement between the parties subsequent to the adoption of Ordinances 1954 and 1964." A similar agreement was in existence when the lump sum benefit of Ordinance 1964 became effective on January 1, 1977. *Ord. 1964,* Sec. IX, *supra.* It is undisputed that the agreement between the town and its uniformed firemen contained no similar clause. Thus, at the time Ordinance 1954 was adopted granting paid but limited sick leave to "all ... uniform and non-uniform employees," one segment of the town's uniformed employees was, by prior and binding contract, entitled to unlimited paid sick leave benefits and one was not.

Ordinance 1954 is clearly intended as a limited grant of paid sick days of 15 days for each calendar year. Thus, it provides that "[a]ll permanent employees, uniform and non-uniform, ... *shall be entitled to sick leave with pay based on their aggregate years of service." Ord. 1954,* Sec. I. *supra,* [Emphasis supplied]. Next, it limits the employees so "entitled" to a grant of only 15 paid sick days in each calendar year. Then, it grants them the right to accumulate days "not used in any calendar year ... from year to year to be used if and when needed for such purposes." *Id., Sec.* II. In turn, Ordinance 1964 gives to "each

town employee, both uniform and non-uniform ... who has been *granted sick leave ... in accordance with Ordinance 1954 ... and has been subject to Ordinance 1954 ...* " an entitlement upon retirement from a state administered retirement system," a lump sum payment as supplemental compensation" under the formula set forth in Ordinance 1964. *Ord. 1964, Sec.* I, *supra,* [Emphasis supplied]. *Section VIII* of Ordinance 1964 reiterates that an employee "who is not subject to the provisions of Ordinance No. 1954 ... shall be excluded from all payments and benefits as provided for in this ordinance."

▋ Ordinance 1964 characterizes its predecessor ordinance as one creating a *grant* of limited annual paid sick leave which, when not fully used in a calendar year, can accumulate. That accumulation is, in turn, permitted by ordinance 1964 to be received as a lump sum supplemental compensation upon retirement under a formula for payment set forth in Section III of the later ordinance, a computation method not here relevant. These ordinances, which granted only a limited right to paid sick leave, for each calendar year and a collateral lump sum benefit dependent upon an accumulation of limited unused sick leave in each calendar year during the aggregate years of service prior to retirement, clearly were not intended to apply to the town's police officers who neither needed nor wanted a limited right of sick leave because they had, and continue to have, a contractual right to unlimited paid sick leave. What plaintiffs here seek is the benefit of the lump sum payment on retirement where, unlike their fellow employees and because of the special clause of their contract, they never have to accumulate sick leave. It is obvious that a police officer who starts each calendar year of employment with a contractual right to unlimited paid sick leave need not accumulate sick leave as a hedge against future disability. They ask to be entitled to one part of the legislative scheme without having imposed upon them the limitations upon which that benefit is founded. Clearly, this cannot be the intent of the town in creating the limited right of an entitlement of 15 paid sick days.

There is moreover, a compelling reason why plaintiffs clearly could not have been intended to be subject to Ordinance 1954 and, thus, under the provisions of Ordinance 1964, are specifically excluded from the latter's accumulated lump sum payment. At the time it passed these dependent and correlated ordinances the town was party to a legally valid contract whereby it had granted unlimited paid sick leave to its policemen. It could not abrogate its existing contractual commitment by enacting a subsequent ordinance limiting its fellow contractors to 15 paid sick days. Nor could it, in a given year, impose upon a seriously ill policeman who contractually had no need to accumulate unused sick days, a requirement demonstrate a failure to use paid sick days in order to have the right to paid sick leave beyond 15 days. There are prohibitions in both the federal and state constitutions against the state, of which this town is an arm, passing a law impairing the obligation of contracts. *U.S. Const.* Art. I, § 10, cl. 1; *N.J. Const.* (1947) Art. IV § VII par. 3. *See Daniel v. Borough of Oakland,* 124 *N.J.Super.* 69, 75 (App. Div.1973); *Baldwin v. Flagg,* 43 *N.J.L.* 495, 503 (Sup.Ct.1881). At the time Ordinances 1954 and 1964 were passed plaintiffs had a vested contractual right to unlimited sick leave and these ordinances were not passed in the exercise of the municipality's police power.

These ordinances are obviously rooted in financial considerations. The grant of a limited number of sick days coupled with an accumulated lump sum benefit is indicative of such concern. When an employee is on extended paid sick leave another must replace him and the town is either paying two persons for one job or perhaps paying overtime to two employees to split the hours ordinarily given by the ill employee. If the benefit payable to the ill or disabled employee is limited to 15 days, a financial savings accrues to the taxpayers. If the limited entitlement of 15 days is not used or is only used in part by an employee during a calendar year a benefit also occurs. The recognition of these *combined* benefits is the clear motivation for enacting the subsequent right to a lump sum upon retire-

ment.   The benefits given encourages employees not to call in as ill when the illness is of no serious nature.

Although plaintiffs urge that this latter aim is accomplished whenever a policeman having unlimited paid sick leave elects not to utilize his right and that he also should have the benefit of unused sick leave when he retires, this overlooks the first and more fundamental financial reason for the grant of the eventual lump sum payment on retirement i.e., the yearly limitation of 15 days paid sick leave and the requirement that entitlement to more than 15 days in a calendar year can only be acquired by prior non-use and, thus, accumulation of benefits.   No such limitation lies within the scheme of plaintiffs' contract with the town.   Therein rests not only the difference but the inconsistency between the clear legislative plan and the unique benefits of plaintiffs' contract.

Plaintiffs have by collective bargaining achieved a proper and a valuable right.   By that process they have contractually placed themselves in a class having benefits distinctly different from those given other town employees.   It may be observed that it is within their power to join the larger class by modification of the next contract to be negotiated.   Until that occurs it is clear they remain beyond the pale of these ordinances.

■   It is the existence of plaintiffs as a contractually created special class having sick pay benefits different from other town employees that causes plaintiffs' argument of a denial of equal protection to fall.   It should be noted that this issue was not asserted as a ground for relief in plaintiffs' complaint, does not appear as an issue in paragraph seven of the pretrial order and was merely raised in truncated form for "record purposes" at the end of plaintiffs' summation.   *See Nieder v. Royal Indemnity Ins. Co.*, 62 *N.J.* 229, 234 (1973).

■   In any event, the argument lacks merit.   It is elemental that a "statute ... does not violate due process or equal protection as long as the classification or discriminatory treatment effected thereby has some reasonable basis, is fairly relat-

ed to a legitimate legislative purpose, and may be justified upon any state of facts reasonably conceived." *Snedeker v. Bd. of Review, Div. of Emp. Sec.,* 139 *N.J.Super.* 394, 403 (App.Div. 1976).

The judgment of May 12, 1982 is affirmed.