116 N.J. Super. 526 (1971)
283 A.2d 119
TOWN OF KEARNY, PLAINTIFF-RESPONDENT,
v.
MODERN TRANSPORTATION CO. AND ANTHONY MIELE, JR., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1971.
Decided October 28, 1971.
*527 Before Judges LEWIS, KOLOVSKY and HALPERN.
Mr. Julius B. Poppinga argued the cause for appellants (Messrs. McCarter & English, attorneys; Mr. Joseph Irenas and Mr. John Drosdick, on the brief).
Mr. Lawrence P. Brady, Jr. argued the cause for respondent.
The opinion of the court was delivered by HALPERN, J.A.D.
Appellants were convicted in the Kearny Municipal Court of using the premises at 75 Jacobus Avenue, in Kearny, as a tank storage farm for human sewage, without first obtaining a certificate of occupancy. On their appeal to the Hudson County Court, after a trial de novo on the record below, they were again convicted of the same offense. They appeal from the judgment of conviction entered in the County Court.
The complaint, as amended, charged the appellants
* * * did on the 8th day of December, 1969, * * * at 75 Jacobus Avenue in the Town of Kearny, County of Hudson, and the State of New Jersey, violate [Article XIII] section 4 of an Ordinance of the Town of Kearny, adopted December 29, 1952 and the amendments *528 thereof and supplements thereto, entitled "Zoning Ordinance of the Town of Kearny" and which section provides "It shall be unlawful to use or permit the use of any building or premises or part thereof, hereafter erected or converted or altered from one class to another class wholly or partly, in its use or structure, until a certificate of occupancy shall have been issued by the Building Inspector," in that at the time and place aforesaid on or about December 8th, 1969 the defendant did use the premises at 75 Jacobus Avenue after said premises had been altered and changed from one class to another class in its use, without first having obtained a certificate of occupancy from the Building Inspector.
The undisputed testimony indicates that Modern Transportation Co. took possession of the premises in October 1968, obtained title thereto on June 12, 1969 and has since been in possession thereof. The premises are located in an M-2 District, which is designated as a general industrial district wherein "any building or premises may be used for any lawful purpose * * *." In 1966 the premises had been used as a tank storage farm for storing tallow, which was a permitted use. On December 8, 1969, without obtaining a certificate of occupancy, appellants used the premises as a tank storage farm for human sewage, which was also a permitted use.
Generally speaking, a tank storage farm is a place where liquids are stored in tanks, and treated if required, pending transshipment. The same method of storing and shipping is used for both tallow and human waste storage. Admittedly, some structural repairs or alterations were made to the building when the change in use took place, but it is of no consequence to our decision since it is not charged that a building permit was required for such repairs or alterations.
Respondent contends that appellants violated article XIII, section 4 of the zoning ordinance because they used the premises "after it had been altered and changed from one class to another class in its use, without first having obtained a certificate of occupancy." It argues that a reasonable interpretation of the ordinance requires the issuance of a certificate of occupancy in order to protect the public health and welfare by ensuring compliance with the zoning ordinance, *529 as well as fire, health and other applicable regulations. Appellants contend the ordinance does not require a certificate of occupancy where there has been a change of a permitted use within the same district. They argue that a change of class in use or structure means a change from one district classification to another rather than a change within a single such classification.
Unquestionably, a municipality has the power to require a certificate of occupancy when premises are changed to a different but permitted use, but the intent to do so must be clearly set forth in the ordinance. Honigfeld v. Byrnes, 14 N.J. 600, 609 (1954); J.D. Land Corp. v. Allen, 114 N.J. Super. 503, 510 (App. Div. 1971); 2 Anderson, American Law of Zoning, § 13.03 (1968). This is especially true when the issue is presented in a quasi-criminal proceeding. Such ordinances must be clear and unambiguous so that men of ordinary intellect need not guess at their meaning. The standard has been clearly set forth in Maplewood v. Tannenhaus, 64 N.J. Super. 80 (App. Div. 1960), certif. den. 34 N.J. 325 (1961), wherein this court, in reversing a conviction under a zoning ordinance for alleged improper storage of material on property, said:
Penal and restrictive laws and ordinances must be strictly construed. All doubts as to their applicability must be resolved in favor of a defendant charged with violation thereof. It is offensive to fundamental concepts of justice and violative of due process of law, as a matter of substance to impose sanctions for violations of laws, whose language is doubtful, vague, and uncertain. Zoning limitations on the use of private property should be clearly and expressly imposed, and should not be left to interference. Hrycenko v. Board of Adjustment, Elizabeth, 27 N.J. Super. 376, 379 (App. Div. 1953). As stated in Jantausch v. Borough of Verona, 41 N.J. Super. 89, 104 (Law Div. 1956), affirmed 24 N.J. 326 (1957):
"* * * the legislative power must be exercised by the municipality itself; it may not ask the courts to write a better or a different ordinance. And it should speak clearly * * * especially in view of the predicament of the citizen who seeks in good faith to utilize his property."
See also, Schack v. Trimble, 48 N.J. Super. 45, 53 (App. Div. 1957), affirmed 28 N.J. 40, 54 (1958). [at 89].
*530 Article XIII, section 4 does not clearly and specifically require appellants to obtain a certificate of occupancy under the facts and circumstances existing in this case. It would require a person with a legal background to examine the entire ordinance, and then by inference spell out the intent of the drafters of the ordinance. The language used in requiring a certificate of occupancy for premises "altered from one class to another class wholly or partly, in its use or structure" is ambiguous to say the least. Appellants' construction thereof, that the premises were never altered from one class to another class because the word "class" refers to "class of district," is as logical as respondent's construction that the word "class" refers to "class of use." The term "class" is not defined in the ordinance.
Since we are dealing with a quasi-criminal proceeding where proof of guilt must be established beyond a reasonable doubt, we resolve the doubt in appellants' favor and reverse. See State on Complaint of Mallet v. Loux, 76 N.J. Super. 409, 414 (App. Div. 1962). In so doing however, we express no view as to whether the building inspector was legally bound to issue a certificate of occupancy had it been applied for when the change in use occurred, or what effect the amended ordinance will have on the future use of the premises, or whether appellants had a prior nonconforming use.
We were advised at oral argument that a civil suit is pending between the parties wherein the last-mentioned issues are to be tried. Such issues are better left for determination in that suit where the trial court will have the benefit of the administrative record below and appropriate injunctive or other relief is obtainable. A quasi-criminal proceeding is a poor vehicle for a meaningful determination of these issues since only a penalty may be imposed. See 3 Anderson, American Law of Zoning § 25.01 (1968).
Appellants' convictions are reversed.