704 A.2d 1337

STATE OF NEW JERSEY, TOWNSHIP OF PENNSAUKEN, PLAINTIFF–RESPONDENT, v. JAMES SCHAD, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 6, 1998—Decided February 3, 1998.

Before Judges LONG, KLEINER and KIMMELMAN.

*Robert E. Levy* and *John A. Underwood*, argued the cause for appellant (*Underwood & Micklin*, attorneys; *Mr. Levy*, on the briefs).

*Michael E. Joyce*, argued the cause for respondent (*Kelley, Wardell & Craig*, attorneys; *Mr. Joyce*, on the briefs).

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

Before the court are two separate appeals from distinct trials *de novo* in the Law Division, wherein defendant was twice convicted of violating provisions of the Township of Pennsauken (Township) sign ordinance. The violations charged in both cases were identical, but the cases related to different points in time. We ordered that the appeals be argued back-to-back. Since both matters involve the same facts and law, we now elect to treat the appeals together in this opinion.

Defendant operates adult entertainment businesses at two locations in the Township; 3000 Admiral Wilson Boulevard and 2251 Route 73. At both locations, there is erected and maintained an illuminated, free-standing sign; at the Admiral Wilson Boulevard location there is also an illuminated, building-mounted sign; and at the Route 73 location there are two illuminated, building-mounted signs. These signs had been erected and maintained prior to the time of the violations charged. All of these pre-existing signs either (1) conformed with the Township's sign ordinance, which limits the number and size of business signs and requires the issuance of a permit before a sign is erected; or (2) were considered to be permitted, non-conforming uses.

The controversy centers upon action taken by defendant in September 1995. At that time, defendant devised and assembled wooden encasement displays containing color transparency photos of women dressed in beach attire or swimwear. Each display measured approximately 42.75 square feet in size. Twelve displays were installed in the building at the Admiral Wilson Boulevard location and eight were installed in the building at the Route 73 location. Each display was set twelve to twenty-four inches behind the front windows and were visible only from outside the premises.

On October 17, 1995, defendant was issued summonses charging the following sign ordinance violations: failing to remove signs exceeding the number of signs permitted, failing to remove signs exceeding the gross square footage of signs permitted at a given location, and failing to obtain permits for the transparency displays. On March 21, 1996, defendant was found guilty by the Pennsauken Municipal Court of the sign ordinance violations as charged and was fined $31,500, together with costs of $120. On September 3, 1996, following a trial *de novo* in the Law Division, defendant's convictions were upheld. The fine and court costs have been paid. The appeal of these convictions was lodged on September 18, 1996, and has been docketed as A–0486–96.

On June 28, 1996, summonses were once again issued to defendant, charging continuing violations of the same sign ordinance provisions. Defendant was again found guilty by the Pennsauken Municipal Court and fined $102,000. On appeal to the Law Division, and following a trial *de novo,* defendant's convictions were affirmed, but the fine was reduced to $65,920. Pending defendant's appeal of the second set of convictions, which was lodged on February 5, 1997, and docketed as A–3218–96, the payment of the fines and court costs have been stayed.

On these appeals, we deal only with defendant's principal contention; that the transparency displays placed inside the windows of each adult entertainment premises were not "signs" within the meaning of the Township's sign ordinance. Our ruling on this

issue makes it unnecessary for us to address other arguments raised by defendant relating to constitutional issues, selective law enforcement, lack of due process, bias, and abuse of power.

The pertinent ordinance provisions follow:

*Pennsauken Code* § 126–700.1 defines a sign as:

SIGN—A structure and a land use, a building wall or other outdoor surface or any device used for visual communication, display, identification or publicity and more fully described under § 126–711 of this chapter.

*Pennsauken Code* § 126–711 further provides:

Any sign erected or maintained after the effective date of this chapter shall conform to the following regulations:

A. Types and area of signs. A sign shall include banners, streamers, whirling or lighting devices or any other type of attention-attracting device and may be a single-faced, double-faced or a V-type structure.

(1) Business sign. A sign which directs attention to a business or commodity for sale, or a profession, service or entertainment rendered or offered upon the premises where such sign is located.

. . .

(9) Wall sign. A sign attached to or painted on a wall and subject to all sign regulations herein.

. . .

C. Signs in commercial districts. The following signs may be erected and maintained in commercial districts, subject to the conditions specified:

. . .

(2) Business signs or signs for any permitted commercial activity. A sign may be erected and maintained on the same building or premises as the use to which it refers, provided that:

. . .

(b) The maximum total area of all permitted signs shall not exceed an area equal to two (2) square feet for every one (1) lineal foot of building frontage; and signs shall be permitted on a building wall or roof; provided, however, that no sign shall extend higher above the building height, as defined herein, than four (4) feet.

(c) Temporary window signs shall not be considered in computing the allowable sign area, provided that such interior window signs do not cover more than ten percent (10%) of any single window and are not permanently affixed to the windows.

. . .

(6) Whenever a sign becomes dilapidated or structurally unsafe or endangers the safety of the public, a building or premises, the Construction Official shall give written notice to the owner of the sign or the owner of the premises upon

which such sign is located, and such sign shall be made safe, repaired or removed, as applicable, within a period of ten (10) days from receipt of such written notice, otherwise such owner shall be in violation of this chapter.

(7) Any nonconforming use may continue to maintain such signs as may have existed on the effective date of this chapter, but after such date none of such signs shall be increased in number or total area.

The issue which we must address is whether the Township's sign ordinance reaches inside the business premises to control interior store displays which are placed behind front windows. The Township argues that the signs in this case fall within the concept of a "display", pursuant to *Pennsauken Code* § 126–700.1. This argument has superficial appeal, but cannot withstand scrutiny when basic rules of statutory construction are applied. *AMN, Inc. of N.J. v. Township of So. Brunswick Rent Leveling Bd.*, 93 *N.J.* 518, 524–25, 461 *A.*2d 1138 (1983). The word "display" cannot be reviewed in a vacuum. On the contrary, its meaning must be assessed in light of the other words in the ordinance of which it is a part. *Kimmelman v. Henkels & McCoy, Inc.*, 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987). All of those words clearly address exterior signage. The rule of *noscitur a sociis* (the meaning of a word may be controlled by the words which surround it) governs. *Germann v. Matriss*, 55 *N.J.* 193, 220–21, 260 *A.*2d 825 (1970). Accordingly, the argument that § 700.1 applies to the facts of this case must fail.

The Township also argues that the signs in question fall within § 126–711. However, as the ordinance itself indicates, this section merely describes the signage specifically defined in § 126–700.1 and must be read *in pari materia* with that section. *Drop v. Town of Belleville*, 192 *N.J.Super.* 236, 242, 469 *A.*2d 934 (App.Div. 1983) (citing *Mimkon v. Ford*, 66 *N.J.* 426, 433–34, 332 *A.*2d 199 (1975) and *State v. Green*, 62 *N.J.* 547, 554–55, 303 *A.*2d 312 (1973)). Here again, the attention of an interested person is directed to focus upon "building wall[s] or other outdoor surface[s], . . ." upon signs "painted on a wall" and upon "signs that may be erected on [a] building. . . ." *Pennsauken Code* § 126–

700.1 and § 126–711A(1), (9). Clearly, the express wording of the ordinance contemplates only the regulation of exterior signage.

Section 126–711C(2)(c) refers only to "temporary" window signs. The principle of *expressio unius est exclusio alterius* (express mention of one thing implies the exclusion of other things) supports our conclusion that the only interior signage which the ordinance intended to regulate was that which was actually affixed to a window. The treatment of signs not affixed to windows could have been, but was not, expressly mentioned. *See Wright v. Port Auth. of N.Y. & N.J.,* 263 *N.J.Super.* 6, 18, 20, 621 *A.*2d 941 (App.Div.), *certif. denied,* 133 *N.J.* 442, 627 *A.*2d 1147 (1993). Factually, it appears that the transparency displays here involved were not affixed, permanently or otherwise, to the windows of each establishment and thus fall completely outside the language of § 126–711C(2)(c).

While zoning ordinances are to be given a reasonable construction and are to be liberally construed in favor of the municipality, *Place v. Board of Adjust. of Saddle River,* 42 *N.J.* 324, 328, 200 *A.*2d 601 (1964), it is nevertheless expected that the wording thereof shall be "clear and unambiguous so that men of ordinary intellect need not guess at [its] meaning." *Town of Kearny v. Modern Transp. Co.,* 116 *N.J.Super.* 526, 529, 283 *A.*2d 119 (1971). Limitations set by zoning ordinances "on the use of private property must be clearly and expressly imposed" and should not be left to inference. *Hrycenko v. Board of Adjust. of the City of Elizabeth,* 27 *N.J.Super.* 376, 379, 99 *A.*2d 430 (App. Div.1953).

"[P]roceedings in municipal courts to prosecute violations of municipal ordinances are essentially criminal in nature." *State v. Barnes,* 168 *N.J.Super.* 311, 314, 403 *A.*2d 7 (App.Div.1979), *rev'd on other grounds,* 84 *N.J.* 362, 420 *A.*2d 303 (1980). Where a penalty may be imposed for the doing of an act on one's private property, "plain and explicit language is required," 6 *McQuillin Mun. Corp.* § 20.52 (3d Ed.1988), and doubts as to the applicability of an ordinance must be resolved in favor of a defendant

charged with violation thereof. *Maplewood v. Tannenhaus*, 64 *N.J.Super.* 80, 89, 165 *A.*2d 300 (App.Div.1960), *certif. denied*, 34 *N.J.* 325, 168 *A.*2d 691 (1961).

We are persuaded that a person of reasonable intelligence would have to venture a "guess" or draw an "inference" to reach the conclusion that interior window displays are intended to be regulated by the Township's sign ordinance with the same force and vigor as are exterior signs. Our decisions in *Hrycenko* and *Tannenhaus* caution us not to sanction the making of such a guess or inference. *See State v. Cameron*, 100 *N.J.* 586, 598, 498 *A.*2d 1217 (1985); *Modern Transp. Co., supra*, 116 *N.J.Super.* at 529, 283 *A.*2d 119.

In sum, the issue here is not whether the Township's sign ordinance is vague and of dubious meaning on the subject of interior window displays. The wording of the pertinent provisions of the sign ordinance is not broad enough to suggest any intent to regulate the erection and maintenance of the interior transparency displays here under consideration. Simply stated, the subject of interior window displays is not covered by the existing sign ordinance. In the words of Judge (later Chief Justice) Weintraub, it is not our province to "write [for the Township] a better or a different ordinance" than the one actually adopted. *Jantausch v. Borough of Verona*, 41 *N.J.Super.* 89, 104, 124 *A.*2d 14 (Law Div.1956), *aff'd*, 24 *N.J.* 326, 131 *A.*2d 881 (1957). We may only enforce the ordinance as written. *Petrangeli v. Barrett*, 33 *N.J.Super.* 378, 384–85, 110 *A.*2d 313 (App.Div.1954); *Park Tower Apts., Inc. v. City of Bayonne*, 185 *N.J.Super.* 211, 221, 447 *A.*2d 1359 (Law Div.1982) (citing *Service Armament Co. v. Hyland*, 70 *N.J.* 550, 556, 362 *A.*2d 13 (1976)). Under the circumstances, the convictions of defendant in each appeal must be set aside and the fines paid are to be returned.

The final orders of conviction entered September 3, 1996, and January 23, 1997, are reversed.