930 A.2d 1236 (2007)
396 N.J. Super. 23
STATE of New Jersey, Plaintiff-Respondent
v.
Wayne DeANGELO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 2007.
Decided September 13, 2007.
*1239 Andrew L. Watson, Princeton, argued the cause for appellant (Pellettieri, Rabstein & Altman, attorneys; Ira C. Miller and Mr. Watson, on the brief).
John V. Dember, argued the cause for respondent (Nerwinski & Dember, attorneys; Mr. Dember, on the brief).
Before Judges A.A. RODRÍGUEZ, SABATINO and LYONS.
The opinion of the court was written by
A.A. RODRÍGUEZ, P.J.A.D.
This matter arises in the rubric of an appeal from a conviction for violating a municipal ordinance. However, the focus of the appeal is the enforceability of the ordinance that prevents the display of a large balloon in the shape of a rat during a labor dispute. We hold that the ordinance, which does not affect the parties' rights in the labor dispute, is not preempted by the National Labor Relations Act (NLRA), 29 U.S.C.A. § 151-69, nor does it abridge any party's freedom of expression. The Ordinance is not void for vagueness. It is content-neutral and the record does not support a claim that it was selectively enforced. Accordingly, the conviction of the union official that authorized display of the balloon is affirmed.
Wayne P. DeAngelo, appeals from his conviction, in the Lawrence Township Municipal Court and again in the Law Division, following a trial de novo, of a violation of Lawrence Township Municipal Ordinance § 535(L)(2) (the Ordinance), which provides:
L. Prohibited Signs. All signs not permitted by this Ordinance are hereby prohibited with the following signs specifically prohibited:
. . .
2. Banners, pennants, streamers, pinwheels, or similar devices; vehicle signs; portable signs, balloon signs or other inflated signs (excepting grand opening signs); and searchlights (excepting grand opening signs), displayed for the purpose of attracting the attention of pedestrians and motorists; unless otherwise excepted.
The facts are not disputed. On April 5, 2005, the International Brotherhood of Electrical Workers, Local 269 (IBEW) was *1240 handbilling the general public on the sidewalk in front of Gold's Gym. DeAngelo was the senior IBEW official at the scene. As part of the labor action, the IBEW displayed a balloon in the shape of a rat, as a symbol of protest against unfair labor practices. We are advised that a rat is a well-known symbol of protesting unfair labor practices. According to the Laborers' E. Region Org. Fund, 2005 WL 1467350, 2005 NLRB Lexis 273, at *21 (June 14, 2005), "[t]he union's use of the rat constituted confrontational conduct intended to persuade third persons not to do business with [employer]. A rat is a well-known symbol of a labor dispute and is a signal to third parties that there is an invisible picket line they should not cross. The [NLRB] has noted that the term `rat' means to `go nonunion [,]'" Marquis Elevator Co., 217 NLRB 461 n. 2 (1975) and is a synonym for the word "scab," i.e., a strike replacement, or someone who refuses to join a union. See Int'l Union of Operating Eng'rs, Local 150 v. Village of Orland Park, 139 F.Supp.2d 950 (N.D.Ill.2001) (noting that "[t]he rat has long been a symbol of labor unrest.")
The balloon is approximately ten feet tall and has no writing on it. In response to a complaint by Gold's Gym, the police were summoned. Lawrence Township Police Officer Mark Harmon went to the scene and spoke with three IBEW leaders about the balloon. The leaders removed the balloon. According to Harmon, "approximately [] 45 minutes later, [he] received a call from the dispatcher on the police radio. They had received a [second] call that the inflatable rat had been put back up." He returned to the scene and issued a summons to DeAngelo, charging that the inflatable rat is a "balloon sign or other inflated sign," prohibited by Ordinance § 535(L)(2).
DeAngelo moved to dismiss the summons challenging the constitutionality of the Ordinance. The State opposed the motion, stipulating to the facts and requesting that the municipal judge decide the legal issue: whether an inflatable rat is a type of sign that the Ordinance prohibits. The judge denied DeAngelo's motion to dismiss, determining that the display of the rat balloon sign was prohibited by the Ordinance unless a permit was issued.
Following a trial in the municipal court, DeAngelo was found guilty of violating the Ordinance. He was fined $100 and charged $33 for court costs. The fines and costs were stayed pending appeal to the Law Division. The Law Division found DeAngelo guilty of the same charge and imposed the same sanction. DeAngelo paid the fine and court costs and filed this appeal.
He raises several contentions, including federal preemption and constitutional challenges based on free speech, void for vagueness and selective enforcement. We are not persuaded by any of these arguments.

The Rat Balloon Is Prohibited By The Ordinance
DeAngelo first contends that the inflatable rat balloon is not a sign prohibited by the Ordinance. Specifically, he argues that "because `sign' is not defined by the Ordinance, the public is left guessing at the meaning of the Ordinance." DeAngelo then asserts that "a sign simply does not include an inflatable rat devoid of any lettering or markings." We disagree.
The first step in construing the Ordinance is to examine its language. Bergen Commercial Bank v. Sisler, 157 N.J. 188, 202, 723 A.2d 944 (1999). The meaning derived from that language controls if it is clear and unambiguous. Ibid. It is axiomatic that "[a]bsent a clear indication to the contrary, the language in the [Ordinance] is to be read in accordance *1241 with its plain and ordinary meaning." Carpenter Tech. Corp. v. Admiral Ins. Co., 335 N.J.Super. 510, 515, 762 A.2d 1066 (App.Div.2000), rev'd on other grounds, 172 N.J. 504, 800 A.2d 54 (2002) (citations omitted). Thus, the absence of a definition in the text means that the plain and ordinary meaning is to be applied. If the text is predisposed to different interpretations, the court can consider extrinsic factors, such as the statute's purpose, legislative history, and statutory context to determine the legislature's intent. Wingate v. Estate of Ryan, 149 N.J. 227, 236, 693 A.2d 457 (1997); Lesniak v. Budzash, 133 N.J. 1, 626 A.2d 1073 (1993); N.J. Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972).
Here, we conclude that the Ordinance's text is clear and unambiguous. The public need not guess at its meaning. It is true that the Ordinance does not define the term "sign." However, it does describe the types of signs which, are prohibited and gives examples. One of these is "balloon signs or other inflated signs" whose purpose is "attracting the attention of pedestrians and motorists." Moreover, Webster's New International Dictionary defines the term "sign" as a symbol, "a conventional symbol or emblem which represents an idea, as a word, letter, or mark. . . . In writing and printing, an ideographic mark, figure, or picture . . . conventionally used to represent a term or conception, usually technical." Webster's New International Dictionary 2334 (2d ed. 1950). Here, the rat balloon at the location of union handbilling was clearly a sign carrying a symbolic message of a labor protest. Therefore, we reject DeAngelo's first contention.
Furthermore, we note that the summons was issued after Officer Harmon had asked that the balloon be removed because it violated the Ordinance. It was removed by IBEW officials and then inflated again.

Federal Preemption
DeAngelo argues that the Ordinance is preempted by the NLRA. We disagree.
In the labor-management field, Congress "has not expressly provided for exclusive federal jurisdiction." Chamber of Commerce v. State, 89 N.J. 131, 142-43, 445 A.2d 353 (1982); see also Bldg. & Constr. Trades Council v. Assoc. Builders & Contractors of Mass./R.I., Inc., 507 U.S. 218, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993). In fact, New Jersey protects organized labor activity in its Constitution. N.J. Const. art. I, ¶ 19. Nonetheless, the courts have derived from the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, c1. 2, a general preemptive power to the NLRA over state laws regulating labor organizations. In Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 748, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the United States Supreme Court "articulated two distinct NLRA pre-emption principles." The first is the Garmon or primary jurisdiction doctrine, which prohibits states or territories from "`regulating activity that the NLRA protects, prohibits or arguably protects or prohibits.'" San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 243-244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775, 782 (1959); Golden State Transit Corp. v. Los Angeles, 475 U.S. 608, 613, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616, 623 (1986) (quoting Wisconsin Dep't of Indus., Labor & Human Relations v. Gould, Inc., 475 U.S. 282, 286, 106 S.Ct. 1057, 1061, 89 L.Ed.2d 223, 228 (1986)). On the other hand, the Machinists pre-emption,[1] the second doctrine, *1242 precludes state or territorial regulations "concerning conduct that Congress intended to be unregulated." Lodge 76 Intern. Ass'n of Machinists v. Wisconsin Employment Relations Commc'n, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976); Golden State Transit Corp., 475 U.S. 608, 614, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616, 623 (1986) (quotation omitted).
In accordance with established preemption principles, where the preemptive effects of federal enactments are not explicit, the state's regulation should be sustained "unless it conflicts with federal law or would frustrate the federal scheme, or unless [we] discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." Bldg. & Constr. Trades Council, supra, 507 U.S. at 218, 113 S.Ct. at 1190, 122 L.Ed.2d at 565 (citations omitted).
DeAngelo cites in his brief to two Advice Memoranda, dated from 1996 and 2000. He argues that the NLRB General Counsel:
[C]learly held that the use of a rat, whether in the form of an inflatable balloon or a costume, in connection with handbilling, does not violate the NLRA and accordingly is protected activity.
However, decisions of administrative law judges (ALJ) are based upon applicable NLRB precedent, not Advice Memoranda. Brandon Reg'l Med. Ctr., 2004 WL 2843187, 2004 NLRB Lexis 688, at *13-15 (Dec. 7, 2004), aff'd on other grounds, 346 NLRB No. 22 (Jan. 9, 2006). In Brandon Reg'l Med. Ctr., the federal ALJ determined that it is unlawful for unions to use inflatable rats to promote secondary boycotts because the rats engage in prohibited picketing. The ALJ determined that they were picketing because, in addition to handbilling, the union members set up a sixteen-foot tall inflatable rat. Id. 2004 WL 2843187, 2004 NLRB Lexis 688, at *30. The ALJ found that the rat in conjunction with the handbillers constituted a "surrogate picket." Id. 2004 WL 2843187, 2004 NLRB Lexis 688, at *25, *29. The NLRB's General Counsel has endorsed this reasoning and has filed charges against at least one other union that has used inflatable rats. See, e.g., Laborers' E. Region Organizing Fund, supra, 2005 WL 1467350, 2005 NLRB Lexis 273, at *1, *11-14.
We must emphasize that an activity that the NLRA permits or prohibits may still violate local laws that are not preempted by federal provisions. Therefore, such activity would be subject to sanctions. See Tzvi Mackson-Landsberg, Is a Giant Inflatable Rat an Unlawful Secondary Picket Under Section 8(b)(4)(ii)(B) of the National Labor Relations Act?, 28 CARDOZO L.R. 1519, 1533 & n. 89 (2006). "[F]or example, if a group of union handbillers violate local ordinances that place constitutionally valid time, place, and manner restrictions on such activity, they will be subject to local sanctions even if they do not violate the NLRA." Ibid. (citing Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (upholding the application of Trenton Ordinance No. 430(4), limiting loud noises to a sound truck publicizing a labor dispute)).
Primary jurisdiction preemption is subject to exceptions for "deeply rooted" local interests. In Garmon, the Supreme Court recognized that the principles it announced were so broad, that they must yield to activity regulated that is merely peripheral to the federal concerns, or where the states' need to regulate certain conduct was so obvious that one would not infer that Congress meant to displace the states' power. Garmon, supra, 359 U.S. *1243 at 243-244, 79 S.Ct. at 779, 3 L.Ed.2d at 782. In Brown v. Hotel & Rest. Employees & Bartenders Int. Union Local 54, 468 U.S. 491, 502, 104 S.Ct. 3179, 3186, 82 L.Ed.2d 373, 384 (1984), the Court noted the following examples of "deeply rooted" local interests are: "breach of contract actions by strike replacements, Belknap, Inc. v. Hale, 463 U.S. 491[, 103 S.Ct. 3172, 77 L.Ed.2d 798] (1983), state trespass actions, Sears, Roebuck & Co. v. [San Diego County Dist. Council of] Carpenters, 436 U.S. 180[, 98 S.Ct. 1745, 56 L.Ed.2d 209] (1978), or state tort remedies for intentional infliction of emotional distress, Farmer v. [United Brotherhood of] Carpenters [& Joiners of Am.], 430 U.S. 290[, 97 S.Ct. 1056, 51 L.Ed.2d 338] (1977)."
Furthermore, in Sears, Roebuck & Co., the United States Supreme Court noted that "the Court has held that state jurisdiction to enforce its laws prohibiting . . . obstruction of access to property is not preempted by the NLRA." Sears, Roebuck & Co., supra, 436 U.S. at 204, 98 S.Ct. at 1761, 56 L.Ed.2d at 229 (footnotes omitted); United Auto., Aircraft & Agric. Implement Workers of Am. v. Wisconsin Employment Relations Bd., 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162 (1956) (upholding the order directing union and certain of its members to cease activities which included mass picketing that obstructed ingress to and egress from plant and interfered with the free and uninterrupted use of public ways); Allen-Bradley Local 1111 v. Wisconsin Employment Relations Bd., 315 U.S. 740, 749, 62 S.Ct. 820, 86 L.Ed. 1154 (1942) (agreeing that the NLRA is not designed to preclude a state from enacting legislation limited to the prohibition or regulation of such employee or union activity as mass picketing, obstructing ingress to and egress from the company's factory, and obstructing the streets and public roads surrounding the factory); accord Cotton Belt R.R. v. Hendricks, 768 S.W.2d 865, 868 (Tex.App.1989); see also Int'l Union, United Auto., Aircraft & Agric. Implement Workers of Am. v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958) (noting a strike, which involved a picket line along and in the public street which was the only means of ingress to and egress from the plant, was conducted in such a manner that the state court could have enjoined it); cf. Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953) (finding that state remedies were excluded, and noting that "nor is this a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes.").
Applying these principles here, we conclude that federal preemption does not preclude enforcement of the Ordinance in this matter. DeAngelo relies on numerous decisions in which a state law interjected itself to several different types of labor-management conflicts.[2] In those cases, the parties to the disputes have been the employer and the union, and the nub of the disputes have been whether there was an unfair labor practice. We agree that such disputes are subject to the exclusive jurisdiction of the NLRB.
Here, the dispute is solely between the State and an individual, over the application of a local ordinance and does not concern an unfair labor practice per se. *1244 In our view, the proper forum for such a dispute is the state court system. It is settled that only when a state or local statute interjects itself into the economic balance between management and labor that such statutes or ordinances would be deemed subordinate to the NLRB. Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Employees, supra, 403 U.S. at 292, 91 S.Ct. at 1920, 29 L.Ed.2d at 486. We are mindful that any distinction between state laws regulating labor relations and state laws of general application are irrelevant. Weber v. Anheuser-Busch, 348 U.S. 468, 478-79, 75 S.Ct. 480, 486-87, 99 L.Ed. 546, 556-57 (1955). Rather, "[i]t is the conduct being regulated, not the formal description of the governing legal standards, that is the proper focus of concern." Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Employees, supra, 403 U.S. at 292, 91 S.Ct. at 1922, 29 L.Ed.2d at 486.
In this case, the conduct being regulated by the Ordinance is not the manner or scope of the union's labor action against Gold's Gym. The Ordinance does not interject itself into the economic balance between the union and Gold's Gym; nor does it regulate a field that Congress sought to regulate to the exclusion of the states or intended that it be unregulated altogether. Rather, the Ordinance is a prohibition that applies to all parties, including IBEW protesters, management, strikebreakers, and the general public. Moreover, the IBEW's ability to handbill is not curtailed. The IBEW message can get out to the passersby through handbills. The balloon is merely a means of getting the passersby's attention.
In addition, the Ordinance is a land use regulation, which is a primary function of municipal government, and a deeply rooted local interest. See Sears, Roebuck & Co., supra, 436 U.S. at 198, 98 S.Ct. at 1758, 56 L.Ed.2d at 226 (finding that in permitting the trespass action to go forward in the state court would create "no realistic risk of interference with the [NLRB's] primary jurisdiction to enforce the statutory prohibition against unfair labor practices."). Because the Ordinance here has little or no impact on the NLRA, the preemption doctrine should not apply. Therefore, we reject DeAngelo's argument that the Ordinance is preempted by the NLRA.

Free Speech
DeAngelo also contends that the Ordinance violates the right of free speech protected by the First Amendment of the United States Constitution because "the inflatable rat is symbolic non-commercial speech and the State's ability to limit such speech is sharply circumscribed because this speech occurred in the traditional public forum;" and the "Ordinance is a content-based regulation of free speech;" and "is not a valid time, place and manner restriction on free speech." We reject these arguments.
A prior restraint refers to judicial and administrative orders that prevent entirely the expression of a message in advance before such communications could occur. See Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 284-285, 716 A.2d 1137 (1998), cert. denied, 527 U.S. 1021, 119 S.Ct. 2365, 144 L.Ed.2d 770 (1999); see also Alexander v. United States, 509 U.S. 544, 550, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441, 450 (1993). In Freedman v. Maryland, 380 U.S. 51, 56-57, 85 S.Ct. 734, 738, 13 L.Ed.2d 649, 653 (1965), the Court held that prior restraints are presumptively unconstitutional, because of the likelihood that they will be used as a method of censoring unfavorable speech. However, in Hamilton Amusement Ctr., supra, 156 N.J. at 284, 716 A.2d 1137, our Supreme Court noted that, "[o]ne of the factors considered in determining if a restriction is a prior restraint is *1245 whether it prevents entirely the expression of a message." The Court explained that the statute does not prohibit plaintiffs from expressing their message entirely it just restricted the location. Id. at 284-85, 716 A.2d 1137.
The property in front of Gold's Gym is a "traditional public forum." See Int'l Union of Operating Eng'rs, Local 150, supra, 139 F.Supp.2d at 958. In a traditional public forum, the State's power to limit expressive activity is limited. The government may enforce restrictions on the time, place or manner of speech even in a public forum. See, e.g., Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753-54, 105 L.Ed.2d 661, 675 (1989). Such restrictions are valid if the regulation is: (1) content-neutral; (2) narrowly tailored to serve a significant government interest; and (3) leave open ample alternative channels for communicating the information. Ibid. (citation omitted). An ordinance is narrowly tailored only "if it targets and eliminates no more than the exact source of the `evil' it seeks to remedy." Frisby v. Schultz, 487 U.S. 474, 485, 108 S.Ct. 2495, 2503, 101 L.Ed.2d 420, 432 (1988).
Applying these principles here, we conclude that the Ordinance's sign prohibition is not a restraint on free speech. First, the Ordinance is content-neutral. All inflatable signs, other than grand opening signs, are prohibited. DeAngelo contends that the "Township has exhibited an explicit preference for commercial speech, i.e., inflatable grand opening signs, at the expense of all other inflatable signs." However, a regulation is considered content-neutral so long as it does not differentiate between different speakers or messages. Int'l Union of Operating Eng'rs, Local 150, supra, 139 F.Supp.2d. at 959. "If neither the language nor the legislative history of the regulation suggests that one party's views may or should be preferred at the expense of another's, the restriction is content-neutral." Ibid. (citing White House Vigil for the ERA Comm. v. Clark, 746 F.2d 1518, 1527 (D.C.Cir.1984)). Although the rule may incidentally affect one message or speaker more than another, that does not work against the content-neutral condition of the regulation provided that the regulation "serves purposes unrelated to the content of [the] expression." Ibid. (quoting Ward, supra, 491 U.S. at 791, 109 S.Ct. at 2754, 105 L.Ed.2d at 675 (citation omitted)). The government's purpose is the controlling consideration. Ibid. Here, it is obvious that the local government wants to foster new businesses within its boundaries as they start up. We conclude that this one exemption for balloon signs is not a violation of the First Amendment that renders the Ordinance void.
Second, from our review, we conclude that the Ordinance is narrowly tailored. The purpose of the Ordinance is to enhance the aesthetics and protect public health and safety.[3] Obviously an inflatable sign that attracts the attention of pedestrians and motorist, also distracts them.
Third, we note that enforcement of the Ordinance does not "prevent entirely" the communication of IBEW's message. As stated before, the IBEW's grievance against Gold's Gym is, presumably, conveyed by the handbills, any conversation *1246 between the protesters and the public and by the obvious fact that there is an ongoing demonstration. The balloon itself, merely attracts attention to the protesters.
Moreover, the court may uphold an ordinance if it finds that it is "necessary to serve a compelling state interest and it is narrowly drawn to achieve that end." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46, 103 S. Ct. 948, 955, 74 L.Ed.2d 794, 805 (1983). As stated before, public health and safety are compelling state interests. Eastern Bergen County Bd. of Realtors, Inc. v. Borough of Fort Lee, 720 F.Supp. 51 (D.N.J. 1989).

Void For Vagueness
DeAngelo also contends that the Ordinance is void for vagueness because it does not define the term "sign," which it seeks to regulate. An individual of ordinary intellect would be required to enter the realm of guesswork in order to deduce that an inflatable rat is a "sign." This, he argues, is a deprivation of due process, i.e., lack of notice and warning that their conduct is subject to criminal charges.
In Town of Kearny v. Modern Transp. Co., 116 N.J.Super. 526, 529, 283 A.2d 119 (App.Div.1971), this court determined that prosecutions for violations of municipal ordinances are criminal in nature. See also State v. Barnes, 168 N.J.Super. 311, 314, 403 A.2d 7 (App.Div. 1979), rev'd on other grounds, 84 N.J. 362, 420 A.2d 303 (1980). Furthermore, this court held that an ordinance must be "clear and unambiguous" so that people of ordinary intellect do not need to guess at its meaning. Kearny, supra, 116 N.J.Super. at 529, 283 A.2d 119. "Because municipal court proceedings to prosecute violations of ordinances are essentially criminal in nature, the Court should follow the rule of strict construction interpreting the terms of the ordinance narrowly." Twp. of Pennsauken v. Schad, 160 N.J. 156, 171, 733 A.2d 1159 (1999).
Both federal and New Jersey constitutions render vague laws unenforceable. See U.S. Const., Amend. V; N.J. Const. Art. I, ¶ 1 (1947). State v. Cameron, 100 N.J. 586, 498 A.2d 1217 (1985), provides an overview of the standards to be considered in deciding whether a law is vague and unenforceable:
[t]he terms of an ordinance must enable a person of "common intelligence, in light of ordinary experience" to understand whether contemplated conduct is lawful. The determination of vagueness must be made against the contextual background of the particular law and with a firm understanding of its purpose.
[Id. at 591, 498 A.2d 1217 (citation omitted).]
Quasi-criminal cases fall within the category of penal laws, which are subjected to sharper scrutiny than civil enactments. Id. at 594, 498 A.2d 1217.
Applying those principles here, we conclude that the Ordinance is not facially vague. It lists the types of signs it restricts, which includes balloon signs and inflated signs. A person of ordinary intellect would be advised which signs were prohibited.

Selective Enforcement
DeAngelo contends that the Ordinance has been selectively enforced against labor unions. We disagree because the record does not support that contention.
In Twp. of Pennsauken, supra, 160 N.J. at 171, 733 A.2d 1159, the Court held that "[i]n order to establish unconstitutional enforcement of the ordinance, defendant must show both a discriminatory effect and a motivating discriminatory purpose." *1247 Ibid. (citation omitted). The municipality, however, "is afforded broad discretion to decide whom to prosecute based on such factors as strength of case and general deterrence value." Ibid. "The conscious exercise of some selectivity in enforcement is not a constitutional violation unless the decision to prosecute is based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Ibid. (citation omitted).
Here, the only proofs that DeAngelo relies on are: (1) in 2004, the Lawrence Township Police were called to a dealership regarding the rat and the investigation resulted in "no violations;" and (2) in 2005, a large inflated balloon was utilized and an individual observed an officer approach the display with issuing a summons or a warning. These proofs are insufficient to meet his burden.
Accordingly, DeAngelo's conviction for violating the Ordinance is affirmed.
SABATINO, J.A.D., concurring in part and dissenting in part.
I join in the majority's rulings that the protest balloon displayed by defendant's labor union amounted to a sign, that federal law does not preempt the application of the municipal sign ordinance, that the sidewalk in front of Gold's Gym is a public forum, that the sign ordinance is not void for vagueness, and that the record does not sufficiently establish proof of selective enforcement.
My sole disagreement concerns what I perceive to be a lack of content neutrality in the ordinance's partial prohibition of balloon signs, banners, streamers and other similar items. In particular, the ordinance exempts a discrete form of commercial speech  inflated signs with "grand opening" messages  while prohibiting non-commercial signs and other commercial advertising. That content discrimination requires, at the very least, a remand for further development of the record.
The First Amendment of the United States Constitution proscribes content-based laws restricting speech unless those laws are demonstrated "necessary to serve a compelling state interest and . . . narrowly drawn to achieve that end." Boos v. Barry, 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333, 345 (1988) (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794, 805 (1983)). Such heightened scrutiny stems from a constitutional presumption that "governmental regulation of the content of speech is more likely to interfere with the free exchange of ideas than to encourage it." Reno v. ACLU, 521 U.S. 844, 885, 117 S.Ct. 2329, 2351, 138 L.Ed.2d 874, 906 (1997). "The interest in encouraging freedom of expression in a democratic society outweighs any theoretical but unproven benefit of censorship." Ibid.
The municipal sign ordinance challenged in this case contains special provisions for commercial displays touting "grand openings," establishments "under new management" and "business relocations." Lawrence Township, N.J., Mun. Ordinance § 534(K)(2) (1998). Specifically, the pertinent section of the ordinance forbids "portable signs; balloon signs or other inflated signs (excepting grand opening signs); and searchlights (excepting grand opening signs), displayed for the purpose of attracting the attention of pedestrians and motorists; unless otherwise excepted." Id. at § 535(L)(2)(emphasis added). Defendant's inflated rat balloon was unquestionably displayed to draw the attention of pedestrians and motorists by Gold's Gym, and there is no claim that the balloon was "otherwise excepted" under the ordinance.
Although I agree that the ordinance's special treatment of commercial grand opening balloons is not "viewpoint" discrimination, *1248 which would require an extraordinary justification to satisfy the First Amendment, see R.A.V. v. City of St. Paul, 505 U.S. 377, 395, 112 S.Ct. 2538, 2550, 120 L.Ed.2d 305, 325-26 (1992), I disagree with my colleagues that the balloon provision is content-neutral. If, hypothetically, Gold's Gym had hoisted an inflated sign, having the same dimensions as defendant's balloon, to promote the opening of its business, no summons would have issued.[1]
For reasons that are not clear on the present record, the ordinance favors a discrete form of commercial speech. The temporary nature of a grand opening provides no useful distinction. Although the grand opening of a business is a short-term event, so was the one-day labor protest organized by defendant and his union. It is not readily apparent how the rat balloon involved in this case could have been significantly more harmful to traffic, safety or aesthetics than a large balloon with an eye-catching ad or a commercial logo.
In Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 513, 101 S. Ct. 2882, 2895, 69 L.Ed.2d 800, 818 (1981), a plurality of the United States Supreme Court determined that, absent a compelling justification, an ordinance may not prohibit or restrict non-commercial outdoor signs while allowing comparable commercial signs. These free-speech principles have been applied by several federal and state courts in invalidating, in full or in part, laws or regulations that exempt "grand opening" displays from prohibitions or restrictions covering non-commercial displays. See, e.g., Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250 (11th Cir. 2005); Rappa v. New Castle County, 18 F.3d 1043 (3d Cir.1994); Nat'l Advertising Co. v. Town of Babylon, 900 F.2d 551 (2d Cir.), cert. denied, 498 U.S. 852, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990); Nat'l Advertising Co. v. City of Orange, 861 F.2d 246 (9th Cir.1988); Adams Outdoor Adver. v. Newport News, 236 Va. 370, 373 S.E.2d 917 (1988).
The Law Division judge was under the misapprehension that the ordinance was content-neutral and did not focus on the disparity for grand opening signs. Additionally, the record was not adequate to determine if the municipality has sufficiently compelling reasons to justify its content-based balloon regulation. Moreover, the record is inadequate for us to consider fairly whether the grand opening exemption in the ordinance, if it is indeed unconstitutional, reasonably can be severed from the sign ordinance without unduly compromising the aims of the ordinance.
For all of these reasons, I dissent in part from the majority opinion and would remand the matter for further proceedings on the First Amendment issues.
NOTES
[1] Commonly referred to as conflict preemption. The difference between the two is "entirely semantic." Livadas v. Bradshaw, 512 U.S. 107, 117 n. 11, 114 S.Ct. 2068, 2075 n. 11, 129 L.Ed.2d 93, 106 n. 11 (1994).
[2] See Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473, (1971) (involving a state contract law that preempted an intra-union labor dispute); Nash v. Florida Indus'l Commission, 389 U.S. 235, 88 S.Ct. 362, 19 L.Ed.2d 438 (1967) (involving a state law that put limitations on striking); Intern. Union of United Auto. Workers v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978, (1950) (involving a state statute restricting the right to strike by requiring, as a condition precedent, a strike vote resulting in an affirmative majority.)
[3] § 535(A) of the Ordinance states its purpose:

[t]o encourage the effective use of signs as a means of communication, to maintain the aesthetic environment and the Township's ability to attract economic development and growth, to improve pedestrian and vehicular safety, to minimize the potential adverse affects of signs on nearby public and private property and to enable the fair and consistent application of the regulations contained herein.
[Ibid. (emphasis added).]
[1] Likewise, if a Disney retail store had just opened in the township, it could have promoted its wares for the grand opening with a rat-shaped balloon depicting the latest popular animated Disney character, from the movie "Ratatouille."