963 A.2d 1200

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
WAYNE DEANGELO, DEFENDANT–APPELLANT.

Argued September 23, 2008—Decided February 5, 2009.

*Andrew L. Watson* argued the cause for appellant (*Pellettieri, Rabstein & Altman,* attorneys).

*John V. Dember* argued the cause for respondent (*Nerwinski, Dember & Fox,* attorneys).

*James Katz* argued the cause for amicus curiae *American Civil Liberties Union of New Jersey* (*Spear Wilderman,* attorneys).

*Annmarie Pinarski* submitted a brief on behalf of amici curiae *The American Federation of Labor and Congress of Industrial Organizations, The AFL–CIO Building and Construction Trades Department* and *The International Brotherhood of Electrical Workers, AFL–CIO* (*Weissman & Mintz,* attorneys; *Ms. Pinarski, Johnathan P. Hiatt,* pro hac vice, *James B. Coppess, Sue D. Gunter* and *Richard M. Resnick,* members of the *District of Columbia bar,* on the brief).

*Albert G. Kroll* submitted a brief on behalf of amicus curiae *The New Jersey State American Federation of Labor–Congress of Industrial Organizations (AFL–CIO)* (*Kroll Heineman,* attorneys; *Matthew P. Rocco,* on the brief).

Justice WALLACE, JR., delivered the opinion of the Court.

The question presented is whether a municipal sign ordinance that prohibited all but a few exempted signs and that expressly prohibited "portable signs[,] balloon signs or other inflated signs (excepting grand opening signs)," can be applied to prohibit a union from displaying as part of its labor protest a large inflatable

rat, a symbol of labor unrest. The union official who was in charge of the protest and responsible for displaying the inflatable rat was given a summons for violating the sign ordinance. The union official was convicted and fined. On appeal, the Appellate Division affirmed in a split decision. Before us, the union official claims in part that the ordinance violates the free speech protections guaranteed by the Federal and New Jersey Constitutions, *U.S. Const.* amend. I; *N.J. Const.* art. I, § 6. We agree, and reverse.

I.

The facts are not disputed. On April 5, 2005, members of the International Brotherhood of Electrical Workers, Local 269, were distributing handbills to the general public on the sidewalk in front of a Gold's Gym in Lawrence Township. The union activity was in response to a labor dispute with a contractor working at the gym. As part of the labor protest the union displayed a ten-foot-tall inflatable rat-shaped balloon on the sidewalk. *See Int'l Union of Operating Eng'rs, Local 150 v. Vill. of Orland Park,* 139 *F.Supp.*2d 950, 958 (N.D.Ill.2001) ("The rat has long been a symbol of labor unrest."). The balloon did not have writing on it.

Lawrence Township Police Officer Mark Harmon was dispatched to the scene. The officer instructed the union members to deflate the rat, and they did. The officer also warned the protestors that if they were to inflate the balloon again, he would issue a summons. The officer returned to the scene about one hour later to discover that the balloon had been re-inflated. As a result, he issued a summons to defendant Wayne DeAngelo, the union official in charge of the demonstration, who admitted that he had re-inflated the balloon. Defendant was charged with displaying a "balloon sign[ ] or other inflated sign[ ]" in violation of Lawrence Township Land Use Ordinance § 535(L)(2). The ordinance expressly prohibits "balloon signs or other inflated signs (except grand opening signs) ... displayed for the purpose of attracting the attention of pedestrians and motorists...." Law-

rence Twp., N.J. Land Use Ordinance § 535(L)(2). Based on the evidence, the Municipal Court of Lawrence Township found defendant in violation of the ban against prohibited signs and imposed a fine.

Following an appeal and a trial de novo, the Law Division also held that defendant violated the ordinance by displaying the rat balloon. On appeal, a majority of the Appellate Division panel affirmed. *State v. DeAngelo,* 396 *N.J.Super.* 23, 930 *A.*2d 1236 (2007). In addressing the free speech issue, the majority reasoned that the ordinance's ban on all inflatable signs other than grand opening signs was not a restraint on free speech. *Id.* at 38, 930 *A.*2d 1236. Rather, the majority found that the ordinance was content-neutral with the purpose to enhance aesthetics and to protect public health and safety, and that it did not prevent entirely the Union's message, as it could still be conveyed by handbill or conversation with individual members of the public. *Id.* at 39–40, 930 *A.*2d 1236.

Judge Sabatino dissented. He found that the ordinance was not content-neutral and noted that "hypothetically, [if] Gold's Gym had hoisted an inflated sign, having the same dimensions as defendant's balloon, to promote the opening of its business, no summons would have issued." *Id.* at 43, 930 *A.*2d 1236. He would have remanded the case for additional fact-finding to determine, amongst other things, if the municipality "has sufficiently compelling reasons to justify its content-based balloon regulation;" and, if the exception for grand opening signs was unconstitutional, whether it could "be severed from the sign ordinance without unduly compromising the aims of the ordinance." *Id.* at 44, 930 *A.*2d 1236.

Defendant appealed the constitutional issue discussed in the dissent as of right under *R.* 2:2–1(a)(2), and we granted his petition for certification seeking review of the remaining issues, 193 *N.J.* 276, 937 *A.*2d 978 (2007). Because we must address the constitutional issue in Judge Sabatino's dissent, and because we conclude that the constitutional issue resolves the case, we limit

our discussion to that issue and one other constitutional issue raised by amicus.

## II.

The Lawrence Township's Land Use Ordinance provides detailed specifications for erecting signs within the Township. The purpose of the sign restrictions

is to encourage the effective use of signs as a means of communication, to maintain the aesthetic environment and the Township's ability to attract economic development and growth, to improve pedestrian and vehicular safety, to minimize the potential adverse effects of signs on nearby public and private property and to enable the fair and consistent application of the regulations contained herein. [Lawrence Twp., N.J. Land Use Ordinance § 535(A).]

The ordinance defines a sign as

[a]ny object, device, display, mural or structure, or a part thereof, situated outdoors or indoors, which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business, product, service, event or location by any means, including words, letters, figures, design symbols, fixtures, colors illumination or projected images. This definition shall specifically include any building or part of a building, including walls and facades used for such purposes and shall further include banners, pennants, flags and similar attention attracting devices.

[*Id.* § 201.]

The ordinance expressly prohibits

Banners, pennants, streamers, ... portable signs; balloon signs or other inflated signs (excepting grand opening signs); displayed for the purpose of attracting the attention of pedestrians and motorists; unless otherwise excepted.

[*Id.* § 535(L)(2).]

The ordinance permits designated temporary signs without the necessity of a permit.

1. Contracting signs. Temporary signs of contractors, [or] painters ... on the lot on which the contracting work is being performed shall be permitted during the period of work.

2. Grand opening and business relocation signs ... not to exceed 30 days....

3. Political signs ... may be erected for a period of 60 days.... When no election ... is within 60 days, only one political sign at any one time shall be permitted.... Political signs in [nonresidential] zones shall not exceed 32 square feet in area nor 6 feet in height.

4. Project development. One sign announcing the name of the project developer shall not exceed 32 square feet in area.

5. Public functions. Signs advertising public functions; providing public service or information; or fund raising events ... shall be permitted for a period of 30 days ... and shall not exceed 32 square feet nor 8 feet in height.

6. Real estate ... signs announcing the sale, rental or lease of the premises on which the sign is located ... shall be in accordance with the following schedule: Residential zones: 4 square feet; Commercial zones: 16 square feet; and Industrial zones: 40 square feet.

7. Special events. Special event signs in conjunction with a temporary use allowed pursuant to 430.L as permitted by the Township Council.

8. Window signs.

9. Yard and garage sale signs.

[*Id.* § 535(K)(1) to (K)(9).]

## A.

 We begin by stating some general First Amendment principles. The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide open...." *New York Times Co. v. Sullivan,* 376 *U.S.* 254, 270, 84 *S.Ct.* 710, 721, 11 *L.Ed.*2d 686, 701 (1964). Where speech on public issues is involved, courts insist that government "allow the widest room for discussion, the narrowest range for its restriction." *Thomas v. Collins,* 323 *U.S.* 516, 530, 65 *S.Ct.* 315, 323, 89 *L.Ed.* 430, 440 (1945). As a result, any restriction on public issue picketing is subject to careful scrutiny. *See United States v. Grace,* 461 *U.S.* 171, 176, 103 *S.Ct.* 1702, 1706, 75 *L.Ed.*2d 736, 743 (1983); *Carey v. Brown,* 447 *U.S.* 455, 459–463, 100 *S.Ct.* 2286, 2289–91, 65 *L.Ed.*2d 263, 268–71 (1980). Consistent with those principles, this Court has declared that "the scrutiny to be accorded legislation that trenches upon first amendment liberties must be especially scrupulous." *State v. Cameron,* 100 *N.J.* 586, 592, 498 *A.*2d 1217 (1985).

 Of course, not all speech is equally protected. For example, government may impose stricter regulations on commercial speech than on non-commercial speech. *See Metromedia, Inc. v. City of San Diego,* 453 *U.S.* 490, 513, 101 *S.Ct.* 2882, 2894, 69 *L.Ed.*2d 800, 818 (1981); *State v. Miller,* 83 *N.J.* 402, 412 n. 5, 416 *A.*2d 821 (1980). Additionally, in determining the limits, if any,

that may be placed on protected speech on public property, different standards may apply "depending on the character of the property at issue." *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n.*, 460 *U.S.* 37, 44, 103 *S.Ct.* 948, 954, 74 *L.Ed.*2d 794, 804 (1983). First Amendment jurisprudence recognizes three types of forums: "the traditional public forum, the public forum created by government designation, and the [non-public] forum." *Frisby v. Schultz*, 487 *U.S.* 474, 479–80, 108 *S.Ct.* 2495, 2500, 101 *L.Ed.*2d 420, 428 (1988) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 *U.S.* 788, 802, 105 *S.Ct.* 3439, 3449, 87 *L.Ed.*2d 567, 580 (1985)). Public streets, parks, and sidewalks are traditionally public forums that occupy a " 'special position in terms of First Amendment protection,' . . . [in that] the government's ability to restrict expressive activity is very limited." *Boos v. Barry*, 485 *U.S.* 312, 318, 108 *S.Ct.* 1157, 1162, 99 *L.Ed.*2d 333, 343 (1988).

■ In the present case, defendant's display of the rat balloon took place in a traditional public forum: the sidewalk. In such a forum,

[f]or the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

[*Perry, supra*, 460 *U.S.* at 45, 103 *S.Ct.* at 955, 74 *L.Ed.*2d at 804.]

## B.

■ Initially, we must determine whether the sign ordinance is a content-based or a content-neutral regulation of speech. That threshold determination must be made because an ordinance "that suppress[es], disadvantage[s], or impose[s] differential burdens upon speech because of its content[,]" is subject to the most exacting scrutiny. *Turner Broad. Sys. v. F.C.C.*, 512 *U.S.* 622, 642, 114 *S.Ct.* 2445, 2459, 129 *L.Ed.*2d 497, 517 (1994). On the other hand, ordinances "that are unrelated to the content of speech are subject to an intermediate level of scrutiny . . . because

in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *Ibid.*

■ To be sure, whether an ordinance is content-based or content-neutral is not always clear. However, "[a]s a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based." *Id.* at 643, 114 *S.Ct.* at 2459, 129 *L.Ed.*2d at 518. On the other side, "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content-neutral." *Ibid.*

In an analogous setting, a plurality of the United States Supreme Court found that regulations banning non-commercial advertising while permitting significant exceptions for commercial advertising were content-based, and invalidated the ordinance. *Metromedia, supra,* 453 *U.S.* 490, 101 *S.Ct.* 2882, 69 *L.Ed.*2d 800. In doing so, the plurality explained

[a]s indicated above, our recent commercial speech cases have consistently accorded noncommercial speech a greater degree of protection than commercial speech. San Diego effectively inverts this judgment, by affording a greater degree of protection to commercial than to noncommercial speech. There is a broad exception for onsite commercial advertisements, but there is no similar exception for noncommercial speech. The use of onsite billboards to carry commercial messages related to the commercial use of the premises is freely permitted, but the use of otherwise identical billboards to carry noncommercial messages is generally prohibited. The city does not explain how or why noncommercial billboards located in places where commercial billboards are permitted would be more threatening to safe driving or would detract more from the beauty of the city. Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages.

[*Id.* at 513, 101 *S.Ct.* at 2895, 69 *L.Ed.*2d at 818 (footnote omitted).]

A number of federal and state courts have applied *Metromedia* to invalidate, in whole or in part, laws or regulations that exempt "grand opening" displays from more general prohibitions or restrictions covering non-commercial displays. *See, e.g., Solantic, LLC v. City of Neptune Beach,* 410 *F.*3d 1250 (11th Cir.2005), *reh'g denied,* 175 *Fed.Appx.* 328 (2006) (ordinance with numerous

exceptions including "grand opening" signs held unconstitutional); *Nat'l Adver. Co. v. Babylon*, 900 *F.*2d 551, 557 (2d Cir.), *cert. denied*, 498 *U.S.* 852, 111 *S.Ct.* 146, 112 *L.Ed.*2d 112 (1990) ("The district court properly followed *Metromedia* in concluding that the exceptions to the ban for temporary political signs and for signs identifying a grand opening, parade, festival, fund drive or other similar occasion impermissibly discriminate between types of non-commercial speech based on content."); *Nat'l Adver. Co. v. City of Orange*, 861 *F.*2d 246 (9th Cir.1988) (ordinance with exceptions for some non-commercial signs found invalid). *See also Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 *F.*3d 814, 820 (9th Cir.1996) (regulation is content-based if officials must examine sign content to determine whether exemption applies), *cert. denied*, 522 *U.S.* 912, 118 *S.Ct.* 294, 139 *L.Ed.*2d 227 (1997); *Whitton v. City of Gladstone*, 54 *F.*3d 1400, 1403–04 (8th Cir.1995) ("The Supreme Court has held that a restriction on speech is content-based when the message conveyed determines whether the speech is subject to the restriction."); *but see Rappa v. New Castle County*, 18 *F.*3d 1043, 1063 (3d Cir.1994) (determining that *Metromedia* did not require invalidation of state law that restricted display of signs with de minimus number of exceptions).

## C.

■ We turn now to apply those principles to the present case. We agree with the dissent in the Appellate Division that a sign ordinance that prohibits a union from displaying a rat balloon, while at the same time authorizing a similar display as part of a grand opening, is content-based. Under the ordinance, the authorization of a sign is justified only by reference to the person or entity displaying the sign. Because the sign ordinance favors commercial over non-commercial speech and, more importantly, because a violation of the ordinance is based on the purpose for which the sign is displayed, that ordinance is content-based.

The goals of the Lawrence Township sign ordinance are to maintain an aesthetic environment, to improve pedestrian and

vehicular safety, and to minimize the adverse effects of signs on property. Although those are salutary goals, they do not justify a content-based restriction of non-commercial speech. As we noted above, content-based restrictions that bar non-commercial speech must be subjected to the most exacting scrutiny. There is no evidence to suggest that a rat balloon is significantly more harmful to aesthetics or safety than a similar item being displayed as an advertisement or commercial logo used in a seven-day grand opening promotion. Nor is there any evidence to suggest that the ordinance "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry, supra*, 460 *U.S.* at 45, 103 *S.Ct.* at 955, 74 *L.Ed.*2d at 804.

In sum, the Lawrence Township sign ordinance is content-based, does not fairly advance any compelling governmental interests, and is not "narrowly tailored" to prevent "no more than the exact source of the 'evil' it seeks to remedy." *Frisby, supra*, 487 *U.S.* at 485, 108 *S.Ct.* at 2503, 101 *L.Ed.*2d at 432. Consequently, we conclude that the zoning ordinance violates defendant's constitutional right to free speech and is therefore unconstitutional.

### III.

Additionally, we have concerns that the ordinance is overly broad.

"According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech. The doctrine seeks to strike a balance between competing social costs." *United States v. Williams*, —— *U.S.* ——, 128 *S.Ct.* 1830, 1838, 170 *L.Ed.*2d 650, 662 (2008). The initial step in evaluating whether a statute is overbroad is to determine the scope of the challenged statute. *Ibid.* That is, what is it that the statute covers. After the scope of the statute is ascertained, the next step is to determine whether the statute prohibits or "criminalizes a substantial amount of protected expressive activity." *Id.* at ——, 128 *S.Ct.* at 1841, 170 *L.Ed.*2d at 665.

*City of Ladue v. Gilleo,* 512 *U.S.* 43, 114 *S.Ct.* 2038, 129 *L.Ed.*2d 36 (1994), illustrates the application of the overbreadth doctrine. In *Ladue,* the City adopted an ordinance preventing "homeowners from displaying any signs on their property except 'residence identification' signs, 'for sale' signs, and signs warning of safety hazards." *Id.* at 45, 114 *S.Ct.* at 2040, 129 *L.Ed.*2d at 41. The ordinance, however, "permit[ted] commercial establishments, churches, and nonprofit organizations to erect certain signs that [were] not allowed at residences." *Ibid.* The Court recognized that signs are subject to municipalities' "police powers[, because] [u]nlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." *Id.* at 48, 114 *S.Ct.* at 2041, 129 *L.Ed.*2d at 42–43. That virtual ban on residential signs was invalidated because,

> Ladue has almost completely foreclosed a venerable means of communication that is both unique and important. It has totally foreclosed that medium to political, religious, or personal messages. Signs that react to a local happening or express a view on a controversial issue both reflect and animate change in the life of a community.... They may not afford the same opportunities for conveying complex ideas as do other media, but residential signs have long been an important and distinct medium of expression.
>
> [*Id.* at 54–55, 114 *S.Ct.* at 2045, 129 *L.Ed.*2d at 47.]

The Court concluded that "[a]lthough prohibitions foreclosing entire media may be completely free of content or viewpoint discrimination, the danger they pose to the freedom of speech is readily apparent—by eliminating a common means of speaking, such measures can suppress too much speech." *Id.* at 55, 114 *S.Ct.* at 2045, 129 *L.Ed.*2d at 47. It noted that the City could address the problems that may be associated with residential signs by adopting "more temperate measures" that would not harm its citizens' First Amendment rights. *Id.* at 58–59, 114 *S.Ct.* at 2047, 129 *L.Ed.*2d at 49.

█ Ordinances that foreclose an entire medium of expression often are the subject of concern as such an ordinance "will be upheld only if narrowly drawn to accomplish a compelling governmental interest." *Grace, supra,* 461 *U.S.* at 177, 103 *S.Ct.* at 1707,

75 *L.Ed.*2d at 744. Examples of ordinances that did not meet the stringent test include those that completely banned the carrying of a flag, banner, or device around the sidewalks surrounding the United States Supreme Court, *ibid.;* the distribution of pamphlets within a municipality, *Lovell v. City of Griffin,* 303 *U.S.* 444, 451–52, 58 *S.Ct.* 666, 668–69, 82 *L.Ed.* 949, 953 (1938); the distribution of handbills on public streets, *Jamison v. Texas,* 318 *U.S.* 413, 416, 63 *S.Ct.* 669, 672, 87 *L.Ed.* 869, 873 (1943); the distribution of literature door-to-door, *Martin v. City of Struthers,* 319 *U.S.* 141, 145–49, 63 *S.Ct.* 862, 864–66, 87 *L.Ed.* 1313, 1318–20 (1943); *Schneider v. State (Town of Irvington),* 308 *U.S.* 147, 164–65, 60 *S.Ct.* 146, 152, 84 *L.Ed.* 155, 166 (1939), and the prohibition of live entertainment, *Schad v. Mount Ephraim,* 452 *U.S.* 61, 75–76, 101 *S.Ct.* 2176, 2186, 68 *L.Ed.*2d 671, 684–85 (1981).

We conclude that, similar to the ordinance in *Ladue,* the scope of the Lawrence Township ordinance is overly broad. The Township "has almost completely foreclosed a venerable means of communication that is both unique and important." *Ladue,* 512 *U.S.* at 54, 114 *S.Ct.* at 2045, 129 *L.Ed.*2d at 47. The use of non-verbal, eye-catching symbolic speech represents a form of expression designed to reach a large number of people. The challenged ordinance virtually eliminates all signs except for grand openings of businesses and other minor exceptions. The Township's elimination of an entire medium of expression without a readily available alternative renders the ordinance overbroad.

Our determination that the Township's ordinance violates the First Amendment does not leave the Township without adequate means to address its asserted concerns. As long as any future sign ordinance "leave[s] open ample alternative channels for communication," the Township may regulate the "time, place, or manner of [the use of] signs." *Clark v. Cmty. for Creative Non-Violence,* 468 *U.S.* 288, 293, 104 *S.Ct.* 3065, 3069, 82 *L.Ed.*2d 221, 227 (1984); *State v. Miller, supra,* 83 *N.J.* at 416–17, 416 *A.*2d 821. To be sure, such an ordinance must be narrowly tailored to

further the governmental interest. *See, e.g., id.* at 413, 416 *A.*2d 821.

## IV.

We conclude that the Township sign ordinance violates the First Amendment right to free speech and is overbroad; it therefore cannot stand. As a result, defendant's conviction predicated on an asserted violation of the sign ordinance must be set aside. The judgment of the Appellate Division is reversed, and the case is remanded to the Law Division for the entry of an order dismissing the summons issued to defendant.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.